## REPUBLIC OF HAWAII *v.* YOSHIDA.

EXCEPTIONS FROM CIRCUIT COURT, SECOND CIRCUIT.

SUBMITTED FEBRUARY 1, 1898.     DECIDED FEBRUARY 25, 1898.

JUDD, C.J., FREAR AND WHITING, JJ.

Murder.

Evidence held to support a verdict of murder in the first degree.

OPINION OF THE COURT BY WHITING, J.

The defendant Yoshida, a Japanese, was indicted and tried for the crime of murder in the first degree in the Second Circuit Court, at the December Term, 1897, held at Lahaina, Island of Maui. The defendant having no counsel, the court appointed two members of the bar to act for him in his defense. A verdict of guilty of murder in the first degree was rendered by the jury.

The bill of exceptions contains two exceptions, one to the admissibility of evidence and one to the refusal to grant a new trial on the ground that the verdict was contrary to the law and the evidence.

On the case being brought before this court, no counsel appearing for the defendant, Charles Creighton, Esq., at the request of this court and with the consent of defendant, presented and argued the exceptions.

First exception: "During the evidence of Fukuda, the witness was asked by the prosecution upon his direct examination:

Q. Did she have any marks on her person? A. I don't know. There was little life in her body when I arrived.

Q. Did she have any marks on her person? A. She had a mark on the back of her head.

Q. What other marks besides the one on her neck? A. Later on I saw she had a mark on her throat.

Q. What kind of a mark? A. I don't remember very well, but I think it was a cut.

Q. Was there much blood from it? A. Lots of blood.

The defendant's counsel objected to the question and answer as incompetent.

Mr. Creighton in this court submitted this exception to the court without argument, but did not feel justified in waiving it under the circumstances of his acting as counsel in this court. We find no error, however, the question and answer and the evidence sought to be obtained were perfectly competent. The evidence was part of the *res gestae.*

Oyasu, the deceased, a Japanese woman, was living with her husband one Irie at Lahaina, Maui. Irie was a workman on a sugar plantation and usually went to work at an early hour in the morning. The defendant, Yoshida, also a Japanese and a plantation laborer, was a frequest visitor at the house of Irie and was received as a friend. On Wednesday night, November 3, 1897, Oyasu and her husband slept at their house where also lived one Akahoshi. Early in the morning of Thursday, November 4th, they all arose and about five o'clock A. M., Irie went to his work. About 6:30 to 7 o'clock, A. M., the defendant Yoshida came to the house and met Oyasu, deceased, in the yard, where she was working, washing clothes; and soon he had hold of Oyasu and stabbed her with a knife which he had brought with him. The woman was trying to get away and defendant kept stabbing her until separated by Akahoshi and one Fukuda, who came to her assistance; when she fell to the ground, and the knife was taken from defendant by them. A

vigorous struggle was had to get the knife from him. He was asked why he did this, by Akahoshi, but made no reply. The woman within a few minutes died.

When defendant first arrived and met her, there were no loud words or altercation until the woman screamed when stabbed by defendant.

The knife used was a strong jack knife, opened and had a cloth or rag wound around it so that the blade could not close.

The woman was cut on her neck and throat, and her body was covered with blood. The wound in the neck severed the arteries and caused death. There was a wound on the upper side of the left breast, another on the back above the shoulder blades. The wound in the neck was by the blow of a knife followed by a long cut, by drawing the knife violently through the neck.

On Thursday, November 4th, between six and seven o'clock in the morning, defendant went to the store of one Kojima, in Lahaina, and purchased a knife which Kojima testified was the same sort of knife as that used by defendant in the killing of the woman. Kojima also testified, that defendant was then perfectly sober and sane and not under excitement. Defendant left the store immediately and, shortly after, the killing took place.

The relations between defendant and Oyasu and Irie had been friendly for a year and a half up to two weeks before the homicide, when Irie forbade the defendant to come to his home as he had told false stories that Oyasu stole rice, and during those two weeks defendant did not go to the house until November 4th. The evidence also shows that deceased was a good woman.

The birthday of the Emperor of Japan was on Wednesday, November 3, 1897, and some celebration was had such as wrestling matches and drinking saki, a Japanese rice wine.

The defendant testified, that on Wednesday night he celebrated and drank a good deal of saki and the next morning his

head got very sore. When he got up, he drank saki, and then went to the store and bought a knife to prune coffee trees, the same knife which was used in the stabbing; that he put the rag on the knife as he wanted to go mauka and cut some cocoanut leaves, and "if I did not have rag round the knife, it would slip in my hand:" the cocoanut tree was near Irie and Takamota's houses, and he went to the house, (Takamota's) as he used to go there frequently and wanted to see the people; this house was near Irie's house; that he had been drinking a good deal of saki and was tired and wanted a rest. His feet were tired, and he went to get some water to drink—but as no water was there, he said to a woman (Oyasu) who was there—(where he went for water). "There is no water here I will go off and get some water." The woman said: "You are too drunk to go and get water." There was a little water left in a tub and "I threw the tub and the water on the ground and some of the water spilled on the woman's foot, and then the woman asked me what I meant by doing that, and she got a big club and hit me on the head and then I struck her with my hand. Then she hit me on the head again—and I got very much excited and angry. Then she kept knocking me around—after I got hit on the head the first time then I became crazy and I don't remember anything more." Q. Where was this knife during all this time? A. I put it in my tobacco-pouch and had it in my pocket. Q. Do you recollect of doing anything with that knife after that time? A. I don't know whether I used the knife or not. Q. What is your next recollection if any that occurred that day? Q. A couple of people came up and got hold of me and held me. Q. At the time you upset this tub and water, etc., where were these other people? A. They were inside the house. Q. Nobody but yourself and woman outside? A. I have forgotten.

The defendant attempted to prove intoxication, but the evidence is entirely to the contrary. The physician who examined the deceased at the time of the homicide, also examined the de-

fendant, and testified, decidedly, that defendant was perfectly sober and he is fully corroborated by the other witnesses.

The court charged the jury fully as to the law of murder in the first and second degrees, and also as to the degrees of manslaughter and assault and battery; also full instructions were given as to the "deliberate premeditated malice aforethought, extreme atrocity, and extreme cruelty necessary to convict of murder in the first degree." The court left it to the jury to find the degree of the crime under the facts as they might find them. No objection or exception was made or taken to the charge.

The defendant's counsel has with ability and earnestness argued that the crime was not murder in the first degree as the evidence did not warrant it, claiming that there was sufficient in the case to show that the defendant's acts were done in the heat of excitement on the spur of the moment, and that the intoxication of defendant took it out of the first degree. Also that the prosecution must prove that there was "deliberate premeditated malice aforethought" beyond a reasonable doubt and that such could not be presumed where murder was of two degrees.

We are satisfied that the jury entirely disbelieved the defendant as to the reasons and manner of the homicide. We have already shown that the defendant did not sustain his ground of intoxication on the evidence. The jury were justified in finding murder in the first degree for there is evidence tending to show clearly that defendant deliberately committed the murder with premeditation; the quarrel on account of Oyasu, the deceased wife of Irie,—the preparations which the defendant had made in buying the knife with which he slew the woman,—wrapping the handle of the knife with cloth for the protection of the hand and to prevent the blade from shutting,—and the proceeding to her place of residence at a time he must have known of the absence of her husband, and there making the assault under circumstances which indicated deter-

mination and definite purpose, are all facts which the jury probably took in consideration in arriving at their verdict.

We cannot hold that the verdict is contrary to the law and the evidence and overrule the exceptions.

· *Chas. Creighton* for defendant, assigned by the Supreme Court to present the exceptions.

*Attorney-General W. O. Smith* for prosecution.